W. J. MILNER AND CO. OF FLORIDA,
Plaintiff,

v.

INTERNATIONAL BROTHERHOOD OF
ELECTRICAL WORKERS, LOCAL
349, Defendant.

W. J. MILNER AND CO. OF FLORIDA,
Plaintiff,

v.

INTERNATIONAL BROTHERHOOD OF
ELECTRICAL WORKERS, LOCAL
728, Defendant.

W. J. MILNER AND CO. OF FLORIDA,
Plaintiff,

v.

INTERNATIONAL BROTHERHOOD OF
ELECTRICAL WORKERS, LOCAL
323, Defendant.

Nos. 71–1419–Civ. to 71–1421–Civ.

United States District Court,
S. D. Florida.

March 13, 1972.

Albert E. Phillips, of Swift, Currie, McGhee & Hiers, Atlanta, Ga., and Peter C. Jones, of Moore, Welbaum, Zook & Jones, Miami, Fla., for plaintiff.

Seymour Gopman, of Mamber, Gopman, Epstein, Miles & Foosaner, North Miami Beach, Fla., for plaintiff in Case No. 71–1419–Civ.

Joseph H. Kaplan, of Kaplan, Dorsey, Sicking, Hessen & Rodenberg, P. A., Miami, Fla., for defendants in Case Nos. 71–1420–Civ. and 71–1421.

MEMORANDUM OPINION GRANT-
ING SUMMARY JUDGMENT

FAY, District Judge.

The plaintiff brought these separate actions against three local chapters of the International Brotherhood of Electrical Workers and they have been consolidated by the Court for pretrial and trial purposes. The plaintiff is the exclusive sales agent in peninsular Florida for building wire products manufactured

by Southwire Company of Carrollton, Georgia. He alleges that each of the defendants has engaged in a course of conduct whereby various building contractors located in South Florida were threatened and their employees induced not to work with Southwire products for the purpose of forcing the building contractors not to use Southwire products on their jobsites. The plaintiff alleges that this action directed at Southwire products was an unfair labor practice under Section 8(b)(4) of the National Labor Relations Act (29 U.S.C.A. § 158(b)(4)(B) and in violation of section 303 of the Labor Management Relations Act (29 U.S.C.A. § 187).

■■ The defendants all moved for summary judgment on the basis that the plaintiff was not entitled to recover any damage from them because his theory of damages was too speculative and remote as a matter of law. While considering the defendants' motions, the Court on its own motion raised the issue of whether the plaintiff as a sales agent of a primary employer involved in a secondary boycott had asserted a sustainable cause of action for damages to its own business under the above mentioned statutory sections. Based on the following consideration of the law applicable to the facts on this record, the Court finds that this plaintiff does not have a federal cause of action under the statutory sections which he has plead and further consideration of the defendants' Motion for Summary Judgment is not necessary.

In United Mine Workers v. Osborne Mining Co., 279 F.2d 716 (CA6, 1960), Love and Amos Coal Company, a sales agent for Osborne Mining Co. sued a labor union on the theory that the labor union, by its secondary boycotts, had destroyed the business of the Osborne Mining Co. and in consequence thereof had deprived Love and Amos of commissions it would have otherwise earned under its contract with Osborne. Similarly, the plaintiff herein seeks to recover, as a sales agent, because of the alleged attempts by the defendants to bar any use of Southwire products in the South Florida building industry. In *Osborne*, the labor union's dispute was with the mining company, a primary employer and here the labor union's alleged activities are ultimately directed, and the plaintiff so pleads, toward Southwire Company and its products. The sales agent in *Osborne* proved damage to his contractual sales relationship with the mining company because of a labor dispute between the labor union and the mining company. Here, the plaintiff sales agent is suing for damage done to his contractual relationship with Southwire Company because of its labor dispute with the unions. The Court in *Osborne* held that the union's action was not directed toward the sales agent and that its damages were incidental and too remote for recovery under the same federal law asserted here. The Court ruled that the sales agent's failure to recover was not attributable to lack of supporting evidence but because it did not have a federally recognized cause of action under section 303 of the Labor Management Relations Act. This Court can find no legally substantial difference between the plaintiff sales agent in *Osborne* and plaintiff here.

This plaintiff argues that several subsequent decisions are controlling rather than *Osborne*. However, none of these cases overruled or refused to follow *Osborne*. On the contrary, they direct their attention to *Osborne* and go to some length to distinguish it upon the facts. In Gilchrist v. United Mine Workers, 290 F.2d 36 (CA6, 1961), Circuit Judge Weick carefully distinguished his *Osborne* ruling on the sales agent when confronted with a claim by a partnership selling the coal of two mining corporations, one of which was a closely held corporation whose principal shareholders, officers, and, directors were also the members of the partnership. The other mining corporation mined coal under lease rights owned by the partnership. Judge Weick ruled that the partnership had a federal cause of action under section 303 where it was not a mere sales agent but the controller of a vertically integrated coal mining and sales

operation and owned the equipment used by the mining corporations which was partially destroyed by the labor union's secondary boycott activities. Judge Weick found the labor union's illegal activities were directed toward the mining and sales operation as a whole and that each part of the operation could recover from the union.

*Osborne* was similarly distinguished in Pennsylvania Railroad Co. v. National Maritime Union, 206 F.Supp. 797 (E.D. Pa.1961). The defendant union moved to dismiss the claim of the owner of ore unloading facilities which were operated by a dock company against whom a secondary boycott was being conducted. The union was involved in a labor dispute with the owners of ships attempting to unload at the pier where the ore unloading facilities were located. The owners of the ore unloading facilities alleged that a secondary boycott prevented unloading at the pier and thereby caused it to lose the per ton fee it charged the docking company for use of its unloading facilities. It further argued that the operation and ownership of the unloading facilities were an integrated part of its business of shipping the ores by rail. On those facts, the Court felt that the plaintiff was factually closer to the plaintiff in *Gilchrist* rather than the sales agent in *Osborne* and denied the motion to dismiss to give the plaintiff an opportunity to more fully develop the facts of the operation of the pier.

The Fifth Circuit Court of Appeals distinguishes the *Osborne* facts from those of the only case in which it has ruled on the issue now before this Court. In Abbott v. Local Union No. 142 of United Association of Journeymen and Apprentices, 5 Cir., 429 F.2d 786 (1970) the plaintiff formed Abbott, Inc. to perform a construction contract which he held as an individual. The Court found that the corporation was the individual plaintiff's alter ego and that the illegal secondary boycott had been directed at both the individual and the corporation to force them to cease dealing with a subcontractor using nonunion labor.

The Court ruled that the facts were like *Gilchrist* rather than *Osborne* and that the individual had a federal remedy under section 303 for his individual damages.

It is interesting that *Abbott* does not discuss the decision which the plaintiff here urges has overruled *Osborne*, sub silentio. Plaintiff asserts that Wells v. International Union of Operating Engineers, Local 181, 303 F.2d 73 (CA6, 1962) gives him a federal cause of action under section 303 since the Court there allowed the employees of the plaintiff road construction company to recover for wages lost as the result of work stoppage caused by the labor union's secondary activities directed at the road construction company's supplier of concrete. The Court ruled the employees had a federal cause of action because section 303 permitted "whoever shall be injured" to sue in federal court. However, the opinion did not discuss the holdings of *Osborne, Gilchrist,* or *Pennsylvania Railroad Co.* as they concern that issue. United Brick and Clay Workers v. Deena Artware, 198 F.2d 637 (CA6, 1952), a case prior to *Osborne* which established the right of suit under section 303 for a primary employer who was the object of a union's illegal secondary activities was cited as authority for the Court's holding in *Wells*. *Deena Artware* has language which literally construes "whoever shall be injured" as broadly granting a right of action to anyone injured by a violation of section 303 of the Labor Management Relations Act of 1947. Unless the limitations of the factual context of each of these cases are placed upon the broad coverage given to section 303, they are inconsistent with the limitation on the right to sue which was delineated in *Osborne* and the subsequent cases construing the applicability of its limitation to each's particular facts. In *Deena Artware*, "Whoever shall be injured" was applicable to the primary employer upon which the union attempted to force their acceptance as representatives of the primary employer's employees. In *Wells*,

the defendant union, through illegal secondary pressures, attempted to force the primary employer to breach its contract with a rival union and fire plaintiff-employees who were members of the rival union. Clearly, in both suits the injured plaintiffs were the ultimate objects of the violation by the defendant unions of section 303.

Regardless of this difficulty in reconciling the Sixth Circuit decisions, the Fifth Circuit has recognized the *Osborne* limitation in *Abbott* and this Court feels that it is applicable to the present facts. Plaintiff is not an alter ego or controller but a mere sales agent of Southwire Company and the relationship is strictly a contractual one. The plaintiff has admitted in answers to defendant's interrogatories that neither plaintiff or Southwire Company or the officers, directors, or partners of either company has any financial interest in the other company. On oral argument of the issue of the existence in the plaintiff of a federal cause of action, plaintiff's counsel represented to and agreed with the Court that the relationship of W. J. Milner to Southwire Company was the same as that of Love and Amos Coal Company to Osborne Mining Company in the *Osborne* case. The denial to the plaintiff and others incidentally injured in their contractual relationship by a labor union's violation of section 303 of the Labor Relations Management Act of 1947, as amended, (29 U.S.C.A. § 187) is not inconsistent with the language of the statute. The statute gives a cause of action to anyone injured by a labor union's commission of the unfair labor practice defined in section 8(b)(4) of the National Labor Relations Act, as amended.[1] Under section 8(b)(4), union activity necessary for an actionable violation seeks to affect a secondary employer, employees of a secondary employer, the primary employer, his employees, and any other person whom the union seeks to prevent the secondary employer from engaging with in doing business.[2] Plaintiff has admitted that the alleged activities of the defendants were directed at Southwire Company and its products and not at plaintiff. Plaintiff is not one of the persons that

---

1. Title 28 U.S.C.A. § 187 reads: "(a) It shall be unlawful, for the purpose of this section only, in an industry or activity affecting commerce, for any labor organization to engage in any activity or conduct defined as an unfair labor practice in section 158(b) (4) of this title.

(b) Whoever shall be injured in his business or property by reason or (sic) any violation of subsection (a) of this section may sue therefor in any district court of the United States subject to the limitations and provisions of section 185 of this title without respect to the amount in controversy, or in any other court having jurisdiction of the parties, and shall recover the damages sustained and the cost of the suit. June 23, 1947, c. 120, Title III, § 303, 61 Stat. 158; Sept. 14, 1959, Pub.L. 86–257, Title VII, § 704(e), 73 Stat. 545."

2. Title 29 U.S.C.A. § 158(b) (4) (A) (B) reads in part: "(b) It shall be an unfair labor practice for a labor organization or its agents * * *

(4) (i) to engage in, or to induce or encourage any individual employed by any person engaged in commerce or in any industry affecting commerce to engage in, a strike or a refusal in the course of his employment to use, manufacture, process, transport, or otherwise handle or work on any goods, articles, materials, or commodities or to perform any services; or (ii) to threaten, coerce, or restrain any person engaged in commerce or in an industry affecting commerce, where in either case an object thereof is—

(A) forcing or requiring any employer or self-employed person to join any labor or employer organization or to enter into any agreement which is prohibited by subsection (e) of this section;

(B) forcing or requiring any person to cease using, selling, handling, transporting, or otherwise dealing in the products of any other producer, processor, or manufacturer, or to cease doing business with any other person, or forcing or requiring any other employer to recognize or bargain with a labor organization as the representative of his employees unless such labor organization has been certified as the representative of such employees under the provisions of section 159 of this title: Provided, That nothing contained in this clause (B) shall be construed to make unlawful, where not otherwise unlawful, any primary strike or primary picketing;"

the statute directly involves in a violation. His injury is incidental to his contractual relationship with a party who is directly involved in a violation of the statute.

The plaintiff urges a construction of section 303 which would conceivably give plaintiff's attorneys a federal cause of action against these defendants in the event that their client failed to pay them for their services herein and that failure was caused by the plaintiff's failure to earn sales commissions under its contract with Southwire Company because of the alleged illegal secondary boycott of Southwire's products. This result makes clear the reasons behind the necessity for the limitation on the right of action expressed by *Osborne* and this Court must adhere to that limitation. It is the order of this Court that the plaintiff has no federal cause of action under section 303 of the Labor Management Relations Act of 1947, as amended and that its claims against all three defendants are dismissed with prejudice. Nothing in this dismissal shall be construed to deprive the plaintiff of any other rights he may have against these defendants, and this ruling is limited to the statute involved.